UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

In re                                                    Chapter 11

PC LIQUIDATION CORP., f/k/a                  **Bankruptcy No. 05-89022-288**
PHOTOCIRCUITS CORPORATION,

                         Debtor.
_____X

CADLE COMPANY II, INC.,

                    Appellant,

                                                         **CV-07-0018(SJF)**
          -against-

PC LIQUIDATION CORP., f/k/a
PHOTOCIRCUITS CORPORATION, OFFICIAL
COMMITTEE OF UNSECURED CREDITORS,            **OPINION & ORDER**

                    Appellees.
_____X

FEUERSTEIN, J.

     Appellant Cadle Company II, Inc. (Cadle), an unsecured creditor of the bankruptcy estate

of PC Liquidation Corp., f/k/a Photocircuits Corporation (the Debtor), appeals from an order of

the United States Bankruptcy Court for the Eastern District of New York (the Bankruptcy Court)

dated November 13, 2006, which overruled its objections to the Debtor's Third Amended

Disclosure Statement (the Disclosure Statement) and confirmed the Debtor's Third Amended Plan

of Liquidation (the Plan) in the Chapter 11 bankruptcy proceeding In re PC Liquidation Corp.,

f/k/a Photocircuits Corporation, Bankruptcy Court No. 05-89022-288 (the PC Liquidation

bankruptcy).

## I. BACKGROUND

The Debtor was in the business of manufacturing printed circuit boards. Cadle is an unsecured creditor of the Debtor.

At the end of July 2004, Stairway Capital Management, L.P. (Stairway) acquired the Debtor's secured credit facility and, according to Cadle, imposed $5.1 million in fees on the Debtor in exchange for Stairway's forbearance in liquidating the Debtor's assets in satisfaction of Stairway's secured debt. Pursuant to certain Settlement Orders approved by the Bankruptcy Court in the PC Liquidation bankruptcy and a related bankruptcy proceeding in March 2006, the Debtor's estate, and all other parties in interest, released any and all claims they might have had against Stairway and others for, *inter alia*, fraudulent conveyance and lender liability (the Settlements).

On October 14, 2005, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the PC Liquidation bankruptcy). On February 6, 2006, the Bankruptcy Court authorized the sale of substantially all of the Debtor's assets to American Pacific Financial Corp. (AMPAC) pursuant to an Asset Purchase Agreement (APA) entered into between the Debtor and AMPAC. The Bankruptcy Court entered an Amended Sale Order (the Sale Order) on February 23, 2006 pursuant to Section 363 of the Bankruptcy Code. On March 29, 2006, the Debtor consummated the sale of substantially all of its assets to AMPAC pursuant to the APA and Sale Order. According to Cadle, the Sale left the Debtor "a shell with no business to reorganize and approximately enough remaining assets to satisfy the allowed claims of its administrative creditors * * * and little if any money to pay unsecured creditors * * *, who stand to receive, at most * * * slightly more than one penny on the dollar." (Appellant's Brief [App.

2

Brf.], p. 4).

On August 21, 2006, the Debtor filed its Third Amended Disclosure Statement (the

Disclosure Statement)[1], which provided information concerning the Debtor's business, its pre-

petition hardships and its post-petition activities, as well as a description of the Debtor's

Confirmed Plan, (Disclosure Statement, pp. 5-11), accompanied by the Debtor's Third Amended

Plan (the Plan) and a copy of the Liquidating Trust Agreement. In addition, the Disclosure

Statement, *inter alia*, (1) advised unsecured creditors that confirmation of the Plan did not assure

them a distribution on unsecured claims, (Disclosure Statement, pp. 5, 33 ); (2) included the

Debtor's analysis of a hypothetical liquidation of the Debtor under Chapter 7 of the Bankruptcy

Code and a comparison of those hypothetical results to the Debtor's proposed distribution under

the Plan, (Disclosure Statement, pp. 26-27, 32); (3) described the Settlements, the potential claims

settled thereby, the likelihood of success if those claims were litigated, the nature of Cadle's

appeals from the Settlement Orders and the impact of the Settlements upon the Debtor's financial

condition and the Plan (Disclosure Statement, pp. 12-18); and (4) discussed formation of the

Liquidation Trust and the duties of the Liquidation Trustee, including his duties relating to the

litigation of claims belonging to the Debtor, (Disclosure Statement, pp. 19-20).

The Plan implements a set of procedures for the purpose of liquidating the Debtor's

remaining assets. Specifically, the Plan, *inter alia*, creates a Liquidation Trust; appoints a

Liquidation Trustee to collect on the Debtor's remaining assets, fix creditor claims and pursue

causes of action for the benefit of the estate; and provides for a Post-Confirmation Committee.

---

[1] The Debtor had previously filed its initial Disclosure Statement and Plan on March 3, 2006, its First Amended Disclosure Statement and First Amended Plan on April 6, 2006 and its Second Amended Disclosure Statement and Second Amended Plan on June 2, 2006.

3

Following a voting period from September 19, 2006 until October 20, 2006, the unsecured

creditors voted in favor of the Plan seventy-eight (78) to six (6).

On October 19, 2006, Cadle filed its objections to the Disclosure Statement and Plan,

including: (1) that the unsecured creditors had relied upon inadequate information contained in the

Disclosure Statement, insofar as they were not told that they could reject the Plan and liquidate the

Debtor's remaining assets through the appointment of an independent Chapter 7 trustee or about

the nature of Cadle's contentions on its appeals of the Settlement Orders; (2) that the Plan violates

Bankruptcy Code § 1129(a)(1) because the Disclosure Statement and Plan were promulgated after

the liquidation of the Debtor's working assets was already complete and, thus, no further purpose

remained for keeping the case under Chapter 11 as opposed to Chapter 7; [2] (3) that the Plan

violates § 1129 of the Bankruptcy Code because it improperly provides for third party releases;

and (4) that the Plan violates Bankruptcy Code § 1129(a)(7) because it fails to provide the

unsecured creditors of the Debtor with an amount on account of their claims that is not less than

the amount such creditors would receive were the Debtor liquidated under Chapter 7.

Following a Confirmation Hearing on October 26, 2006, the Bankruptcy Court overruled

Cadle's objections finding, *inter alia*, that "the information that Cadle is asking [for] in such

elaborate detail is [not] necessary to advise the creditors whether they should vote to accept the

plan or not." (Transcript of October 26, 2006 Hearing [10/26/06 T.], p. 15). The Bankruptcy

Court further found that "more attention could have been paid to the disclosure statement in

---

[2] According to Cadle, the Bankruptcy Court *sua sponte* issued an order to show cause as
to why the PC Liquidation bankruptcy should not be converted to a Chapter 7 proceeding.
However, after a hearing on August 10, 2006, the Bankruptcy Court allowed the confirmation
process to proceed under Chapter 11.

describing the position of Cadle," (10/26/06 T., p. 16), but that "taking the longer view from a standpoint of prudence and pragmatism, I don't know that there's really any significant benefit from [trying to reach some consensual text with Cadle regarding the parties' respective litigation positions]." (10/26/06 T., p. 31). In sum, the Bankruptcy Court stated that nothing "would be gained by making the parties rewrite the disclosure statement." (10/26/06 T., p. 51).

In addition, with respect to Cadle's contention that the case should be converted to a Chapter 7, as opposed to a Chapter 11, case, the Bankruptcy Court stated that it was "an awfully close case * * *, and you know that I was leaning toward a conversion to Chapter 7, and I'm still not all that satisfied that an 11 is going to be less expensive than a 7, but I thought that given the amount of effort that had been expended, given the ability to put the breaks on some of the mounting litigation costs, pending the approval of the plan and disclosure statement, that I could narrow that gap." (10/26/06 T., p. 17). With respect to Cadle's contention that a conversion to Chapter 7 would be more beneficial to the unsecured creditors because an independent trustee would be appointed in lieu of the Liquidation Trustee, the Bankruptcy Court found that it would retain control over the allowance of fees, that it "never entertained any doubts whatsoever about [the Liquidation Trustee's] professionalism and his independence," and that it did not have a problem, "based upon the totality of the facts and circumstances in having Mr. Stern designated as the [Liquidation] trustee." (10/26/06 T., pp. 42, 44, 46). In sum, the Bankruptcy Court stated that it was "not concerned about getting control over the administrative expenses * * *[,] the fees[,] * * * runaway costs[,] * * * [or] that Mr. Stern is going to be compromised by the mode of his selection. So while some of the arguments that [Cadle's counsel] makes have a certain appeal on their face, * * * look[ing] at the facts and circumstances of this case and * * * look[ing] at the

players, [the Court was] satisfied that going forward [under Chapter 11] is sensible." (10/26/06 T., p. 50). The Bankruptcy Court further stated that when it compared "what would have happened had [the case] been converted to a [Chapter] 7, and because this is a liquidating [Chapter] 11 and [the Bankruptcy Court does] control the costs, * * * it's [not] going to be more expensive in [a Chapter 11] mode than in a [Chapter] 7. * * * It's not worth upsetting the apple cart, and it's not because of all the time. It's just under the circumstance it doesn't make sense to covert this to a [Chapter] 7." (10/26/06 T., p. 53).

By order dated November 13, 2006, the Bankruptcy Court approved the Debtor's Disclosure Statement and the Plan (the Confirmation Order).[3] The Bankruptcy Court found, *inter alia,* that the Disclosure Statement contained "adequate information" as required by Section 1125(a) of the Bankruptcy Code. (Confirmation Order, pp. 4, 7).

On November 15, 2006, Cadle sought a stay of the Confirmation Order in this Court, which was assigned docket number 06-cv-6120. Following a hearing on November 28, 2006, Cadle's application was denied on the basis, *inter alia,* that it could not show a substantial likelihood of success on the merits.

The Plan became effective on or about December 6, 2006 and, according to the Debtor, was substantially consummated almost immediately thereafter, insofar as (1) the Liquidation Trust was funded by the transfer of the Debtor's money to Richard L. Stern, Esq., the Liquidation Trustee (the Trustee); (2) the Trustee assumed management and control over the Debtor's assets in the Liquidation Trust, including any and all litigation claims; and (3) the Trustee began to

---

[3] At the commencement of the hearing, following the successful negotiation of the objections of another creditor, Cadle was the only objecting creditor. (See Transcript of October 26, 2006 Hearing, pp. 13-14).

distribute funds from the Liquidation Trust to holders of allowed claims and to review and authorize resolution of multiple avoidance actions.

On January 4, 2007, Cadle filed a notice of appeal from the Confirmation Order. Thereafter, Cadle moved to expedite the hearing and determination of its appeal.[4] On appeal, Cadle raises essentially the same contentions as he raised in his objections to the Disclosure Statement and the Plan.

II.    DISCUSSION

      A.    Standard of Review

28 U.S.C. § 158(a) vests district courts with appellate jurisdiction over, *inter alia*, final judgments, orders and decrees of bankruptcy judges. Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." The district court must apply a clearly erroneous standard of review to the bankruptcy court's findings of fact and a *de novo* standard of review to the bankruptcy court's conclusions of law. See In re Adelphia Communications Corp., 367 B.R. 84, 90-91 (S.D.N.Y. 2007); see also Fed. R. Bankr. P. 8013 ("Findings of fact * * * shall not be set aside unless clearly erroneous * * *").

      B.    Equitable Mootness

The Debtor contends that Cadle's appeal is equitably moot since the Plan has been

---

[4] In light of the determination of this appeal, Cadle's motion to expedite is denied as moot.

"substantially consummated."

An appeal must be dismissed as constitutionally moot when "an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party.'" Church of Scientology of California v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed.2d 293 (1895)). A bankruptcy appeal may also be dismissed even when it is not constitutionally moot, when, although "effective relief could conceivably be fashioned, implementation of that relief would be inequitable." In re Metromedia Fiber Network, Inc., 416 F.3d 136, 143 (2d Cir. 2005) (quoting Official Committee of Unsecured Creditors of LTV Aerospace and Defense Co. v. Official Committee of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.), 988 F.2d 322, 325 (2d Cir. 1993) (Chateaugay I)). "Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented." In re Metromedia, 416 F.3d at 144.

Bankruptcy appeals may be equitably moot in two situations: (1) when an unstayed order has resulted in a "comprehensive change in circumstances," or (2) when a reorganization is "substantially consummated." In re Delta Air Lines, Inc., 374 B.R. 516 (S.D.N.Y. 2007) (citing, inter alia, Chateaugay I, 988 F.2d at 325 (comprehensive change in circumstances) and Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952 (2d Cir. 1993) (Chateaugay II) (substantial consummation of reorganization plan)); Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) (accord). Section 1101(2) of Chapter 11 of the United States Bankruptcy Code provides that a plan has been "substantially consummated" when there has been:

(A) transfer of all or substantially all of the property proposed by the plan to be

8

transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

When a chapter 11 plan of reorganization has been "substantially consummated," a presumption of equitable mootness arises. See In re Adelphia, 367 B.R. at 91; In re Loral Space & Communications Ltd., 342 B.R. 132, 137 (S.D.N.Y. 2006). In order to rebut the presumption of equitable mootness that arises when a reorganization has been "substantially consummated," the appellant must establish each of the following five factors: (1) that the Court can still order effective relief; (2) that such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity;" (3) that such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court;" (4) that the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings;" and (5) that the appellant "pursued with diligence all available remedies to obtain a stay of execution of the objectionable order * * * if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." Chateaugay II, 10 F.3d at 953 (hereinafter referred to herein as the Chateaugay II factors). An appeal of a bankruptcy transaction is equitably moot *unless* all five factors are met. See In re Kassover, 98 Fed.Appx. 30, 31 (2d Cir. 2004).

The Plan has been substantially consummated, as that term is defined in Section 1102(2), insofar as (1) the Liquidation Trust was funded by the transfer of the Debtor's money to the Trustee; (2) the Trustee assumed management and control over the Debtor's assets in the

9

Liquidation Trust; and (3) the Trustee began to distribute funds from the Liquidation Trust. Thus, Cadle must overcome the presumption that the instant appeal is equitably moot.

"A chief consideration under Chateaugay II is whether the appellant sought a stay of confirmation. If a stay was sought [the court should] provide relief if it is at all feasible, that is, unless relief would 'knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court'". In re Metromedia, 416 F.3d at 144 (citing Chateaugay II, 10 F.3d at 953). Cadle promptly sought not only a stay of the Plan, but also an expedited hearing and determination of the appeal. Thus, Cadle pursued with diligence the available remedies to obtain a stay of execution of the Confirmation Order.

As the Debtor has been, or is in the process of being liquidated, any relief granted on appeal would not negatively affect the re-emergence of the Debtor as a revitalized corporate entity. Moreover, appellees do not dispute that all parties adversely affected have had notice of, and an opportunity to participate in, this appeal. Accordingly, the second and fourth Chateaugay II factors are inapposite. See, e.g. In re Adelphia, 367 B.R. at 96 (finding the second Chateaugay II factor inapposite where it was undisputed that the Debtors had been liquidated and effectively ceased to exist).

With respect to the first and third Chateaugay II factor, the only available relief left to Cadle in light of the dismissal of his appeals of the Settlement Orders is a remand to the Bankruptcy Court to convert the bankruptcy proceeding from one under Chapter 11 to one under Chapter 7. It cannot be said that any potential conversion of this case to a Chapter 7 liquidation proceeding would unravel such intricate transactions "so as to knock the props out from under the

authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." Chateaugay II, 10 F.3d at 953. In fact, a conversion of the proceeding into a Chapter 7 bankruptcy would merely result in the liquidation of the Debtor's remaining assets under the provisions of Chapter 7. Accordingly, Cadle has rebutted the presumption that this appeal should be dismissed as equitably moot.

      B.      Bankruptcy Code § 1125(a)(1)

     Cadle contends that the Disclosure Statement failed to provide adequate information as required pursuant to Bankruptcy Code §1125(a)(1). Specifically, Cadle contends that the Disclosure Statement should have included (1) the fact that if Cadle were successful on its appeals of the Settlement Orders, the Debtor's estate would have the ability to pursue the subordination of Stairway's claim and the avoidance of over $5 million in forbearance fees as fraudulent conveyances or under other lender liability theories; (2) that under the Plan, the Debtor would consider itself bound by the releases in the Settlement Orders, would not pursue Stairway and is predisposed against prosecuting those claims; (3) that in the absence of a plan of reorganization, an independent trustee would be appointed pursuant to Chapter 7, who would render an independent informed decision as to whether or not to prosecute those claims; (4) the non-disclosure of third party releases; (5) an accurate comparison of the costs of Chapter 7 with the costs under the Plan; and (6) the advantage of converting the Chapter 11 proceeding to a Chapter 7 proceeding.

     The Debtor contends that the Bankruptcy Court properly found that (1) the Bankruptcy Code's definition of "adequate information" expressly excludes discussions concerning possible

or proposed plans in the Disclosure Statement, (2) the Disclosure Statement was not required to extol the benefits Cadle believes would result from a Chapter 7 liquidation; (3) the Disclosure Statement contained "adequate information" as required by Section 1125(a), including a discussion regarding the Settlement Orders; and (4) the Debtor established by a preponderance of evidence that the Plan complied with all relevant provisions of the Bankruptcy Code.

The Bankruptcy Code requires a debtor to engage in "full and fail disclosure" during the reorganization process. In re Momentum Manufacturing Corp., 25 F.3d 1132, 1136 (2d Cir. 1994). A Chapter 11 disclosure statement must contain "adequate information," as that term is defined in Section 1125(a)(1) of the Code, in order to be approved by the bankruptcy court. As of the date the PC Liquidation bankruptcy was commenced[5], Section 1125(a)(1) of the Code defined "adequate information" as follows:

> "'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan."

The standard for disclosure is, thus, flexible and what constitutes "adequate information" in any particular situation is determined on a case-by-case basis, see In re Aspen Limousine Service, Inc., 193 B.R. 325, 334 (D.Colo. 1996); In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988), with the determination being largely within the discretion of

---

[5]  Section 1125(a)(1) was subsequently amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective to bankruptcy proceedings filed on or after October 17, 2005. As the PC Liquidation bankruptcy was commenced three (3) days prior to the effective date of the amendment, the prior language is applicable to this action.

the bankruptcy court. See In re A. H. Robins Co., Inc., 880 F.2d 694, 697 (4th Cir. 1989); Matter of Texas Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988); see also In re El Comandante Management Co., LLC, 359 B.R. 410, 414 (Bankr. D. Puerto Rico 2006) (holding that the determination of what is "adequate information" in a disclosure statement is a practical and variable inquiry made on a case-by-case basis * * * Beyond the statutory guidelines described in Section 1125(a)(1), the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court (internal quotations and citations omitted)). "Factual findings of the bankruptcy judge on 'core matters' such as the adequacy of disclosure under Section 1125(a) should be set aside on appeal by the district court only if those findings represent an abuse of discretion." Kirk v. Texaco, Inc., 82 B.R. 678, 681 (S.D.N.Y. 1988) (citing In re Snyder, 56 B.R. 1007, 1009 (N.D. Ind. 1986)). Thus, the issue is whether the Bankruptcy Court's finding that the Disclosure Statement contains "adequate information" within the meaning of Section 1125(a)(1) is clearly erroneous.

The Disclosure Statement fairly communicated the specifics of the Settlements, including the reasons behind the Settlements and the merits of the potential litigation behind those Settlements. In addition, the Disclosure Statement adequately apprised creditors of Cadle's appeals of the Settlement Orders, which were pending at the time the Disclosure Statement and Plan were approved. The information provided is adequate to enable a reasonable creditor to make an informed judgment about the Plan. Contrary to Cadle's contention, a disclosure statement is not required "to speculate as to future uncertainties, such as the consequences of possible outcomes of pending litigation." In re Stanley Hotel, Inc., 13 B.R. 926, 935 (Bankr.D.Colo. 1981); see also In re CDECO Maritime Const. Inc., 101 B.R. 499, 501 (Bankr.

13

N.D.Ohio 1989) (holding that a disclosure statement is not the place to argue various theories of recovery of pending litigation or to speculate as to future uncertainties such as consequences of various possible outcomes of pending litigation). Accordingly, the Bankruptcy Court's finding that the Disclosure Statement contained "adequate information" as required by Section 1125(a) is not clearly erroneous.

C.      Bankruptcy Code § 1129(a)

1.      Section 1129(a)(1)

Cadle contends that the Bankruptcy Court erred by confirming a plan which violated Bankruptcy Code § 1129, insofar as a case should not be allowed to remain in Chapter 11 where the provisions of that section do not constitute "a more efficacious, cost effective and appropriate disposition of the debtor's assets." (App. Brf., p. 28). According to Cadle, the case should have been converted to a Chapter 7 since (1) neither rehabilitation nor reorganization of the Debtor was ever possible; (2) the Debtor continued to lose money as a debtor-in-possession, incurring substantial administrative expenses even after its assets were sold, at the expense of the unsecured creditors; and (3) the unsecured creditors, whose interests are in conflict with the Debtor's priority and secured creditors, are entitled to non-conflicted representation.

The Debtor contends (1) that Cadle has failed to identify a single provision of the Bankruptcy Code that is violated by the Plan; and (2) that the Bankruptcy Code, as well as case law in this Circuit, specifically allow Chapter 11 liquidation.

Section 1129(a)(1) provides that the bankruptcy court "shall confirm a plan only if * * *

[it] complies with the applicable provisions of [the Bankruptcy Code]." The Bankruptcy Court concluded, *inter alia*, that the Plan satisfies all the applicable provisions of the Bankruptcy Code and, thus, satisfies Section 1129(a)(1). (Confirmation Order, p. 7). Section 1129(a)(1) has been interpreted to be applicable to provisions of the Bankruptcy Code pertaining to the form and content of reorganization plans. See Kane v. Johns-Manville Corp., 843 F.2d 636, 648-649 (2d Cir. 1988) (stating that the legislative history of Section 1129(a)(1) suggests that Congress intended the phrase "applicable provisions" to mean provisions of Chapter 11 that concern the form and content of reorganization plans and that it is doubtful that violations of Code provisions unrelated to the form and content of a plan implicate subsection 1129(a)(1) at all). As noted by the Debtor, Cadle fails to identify any provision of the Bankruptcy Code pertaining to the form and content of the Plan which is violated by the Plan.

Moreover, "[w]hile the primary purpose of Chapter 11 is reorganization, liquidation is not prohibited. Reorganization encompasses rehabilitation and may include liquidation." In re Copy Crafters, 92 B.R. at 985-986 (internal quotations and citations omitted); see also In re Ionosphere Clubs, Inc., 184 B.R. 648, 654 (S.D.N.Y. 1995) (citing cases recognizing that Chapter 11 permits liquidation in appropriate cases); In re Deer Park, Inc., 136 B.R. 815, 818 (9th Cir.BAP 1992), aff'd, 10 F.3d 1478 (9th Cir. 1993) (holding that Section 1129(a)(11) of the Bankruptcy Code provides that liquidation may be contemplated in a valid Chapter 11 plan of reorganization). Thus, the Bankruptcy Court's failure to convert the case from a Chapter 11 to a Chapter 7 did not violate any provision of the Bankruptcy Court relating to the form and content of the Plan and, thus, did not violate Section 1129(a)(1) of the Code. Accordingly, this contention is without merit.

15

a.    Release of Third Parties

Cadle contends that the Plan indirectly provides for third-party releases by incorporating the Settlements, thereby improperly prohibiting creditors from seeking redress against parties other than the Debtor.[6]  Cadle further contends that this is not a case where extraordinary circumstances justify such third-party releases.

The Debtor contends that the release language in the Plan, as modified by the Confirmation Order, only pertains to claims as against the Debtor, not third parties, and, thus, complies with Sections 1141 and 1129(a)(1) of the Bankruptcy Code.  According to the Debtor, creditors are not barred under the Plan from asserting any independent claims they may have against anyone other than the Debtor.

Cadle's real dispute is not with the language in the Plan, as modified by the Confirmation Order, but with the Settlements and the releases contained therein.  In essence, Cadle is improperly trying to collaterally attack the Bankruptcy Court's orders approving the Settlements, the appeals from which have since been dismissed as equitably moot.  Accordingly, Cadle is precluded from rearguing the merits of the Settlement Orders in this appeal.  See, e.g. In re Frontier Airlines, Inc., 117 B.R. 588, 591-592 (D.Colo. 1990) (holding that the appellant may not appeal the bankruptcy court's order confirming the plan as a way to collaterally attack the

---

[6]  Cadle admits that the Confirmation Order deleted the language in the Plan providing for third-party releases, to which he originally objected, but contends that by incorporating the Settlements, the Plan effectuates the same outcome notwithstanding the absence of the express language.

16

bankruptcy court's order approving a settlement agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, from which the appellant failed to appeal); see also Mickowski v. Visi-Trak Worldwide, LLC, 321 F.Supp.2d 885, 898 (N.D.Ohio 2004), aff'd, 415 F.3d 501 (2005) (dismissing a judgment creditor's fraud-based successor liability claim, which challenged a purchase of assets approved by the bankruptcy court under Section 363 of the Bankruptcy Code, as an improper "thinly disguised collateral attack on the judgment confirming the sale").

### 2.    Section 1129(a)(7)

Cadle contends that the Confirmation Order violated Bankruptcy Code § 1129(a)(7)(A) because it, and certain other creditors, did not accept the Plan and no showing was made that they will receive a greater distribution under the Plan than under Chapter 7. Cadle contends that the Bankruptcy Court's acceptance of the liquidation analysis in the Plan was clearly erroneous because "it required the acceptance of a series of highly unlikely assumptions, none of which were subject to proof, concerning the cost of going forward under the Plan." (App. Brf., p. 33). Specifically, Cadle, inter alia, challenges the Bankruptcy Court's determinations (1) that Stern would act in a prudent manner as Liquidation Trustee; (2) with respect to the cost of administering the Plan; and (3) with respect to its ability to exercise oversight over the payment of fees.

The Debtor contends that Cadle has not established that liquidation under Chapter 7 would, in fact, be less expensive than the liquidation under the Plan. The Debtor contends that the Liquidation Trustee will cost less than a Chapter 7 trustee because, pursuant to Bankruptcy Code § 326, a Chapter 7 trustee is entitled to compensation based on a percentage of distributions,

which is several million dollars in this case, whereas the Liquidation Trustee is entitled to only an

hourly fee based on actual time worked under the Plan. In addition, the Debtor contends that

liquidation under Chapter 7 would actually increase costs to the estate since any new parties to the

case would have to substitute into pending litigation and, thus, be brought up to speed. Moreover,

the Debtor contends that Section 1129(a)(7) only requires that a creditor do no worse under

Chapter 11 than it would under Chapter 7, not that a creditor actually do better under Chapter 11.

Furthermore, the Debtor contends that the Bankruptcy Court expressly found that the data

available to it evidenced the reasonableness of the Debtor's liquidation analysis, whereas Cadle's

allegations are unsubstantiated, particularly because he failed to examine the Committee's

accountants or the Debtor's representative at the Confirmation Hearing.

Section 1129(a)(7) provides, in relevant part, that the bankruptcy court "shall confirm a

plan only if * * * [w]ith respect to each impaired class of claims or interests– (A) each holder of a

claim or interest of such class– (i) has accepted the plan; or (ii) will receive or retain under the

plan on account of such claim or interest property of a value, as of the effective date of the plan,

that is *not less than* the amount that such holder would so receive or retain if the debtor were

liquidated under chapter 7 of this title on such date." (Emphasis added).

The Second Circuit has held that Section 1129(a)(7) "incorporates the former 'best interest

of creditors' test and requires a finding that each holder of a claim or interest either has accepted

the plan or has received no less under the plan than what he would have received in a Chapter 7

liquidation." Kane, 843 F.2d at 649. "In determining whether the best interests standard is met,

the court must measure what is to be received by rejecting creditors in the impaired classes under

the plan against what would be received by them in the event of liquidation under chapter 7." In

18

re Adelphia Communications Corp., 368 B.R. 140, 252 (S.D.N.Y. 2007) (Adelphia II).

A finding by the bankruptcy court that all creditors would receive no less under the plan than what they would have received in a Chapter 7 liquidation is reviewed under a "clearly erroneous" standard. Kane, 843 F.2d at 649; see also In re Adelphia Communications Corp., 361 B.R. 337, 364 (S.D.N.Y. 2007), appeal dismissed, 367 B.R. 84 (S.D.N.Y. 2007) (Adelphia I). "In order to show that a payment under a plan is equal to the value that the creditor would receive if the debtor were liquidated, there must be a liquidation analysis of some type that is based on evidence and not mere assumptions or assertions. * * * However, the valuation of a hypothetical chapter 7 liquidation is, by nature, inherently speculative and is often replete with assumptions and judgments." Adelphia I, 361 B.R. at 366-367 (internal quotations and footnotes omitted).

At the Confirmation Hearing, the Debtor and the Committee presented a liquidation analysis based on proofs submitted to the Bankruptcy Court and available to challenge by Cadle and, thus, met their burden of showing that the Plan complies with Section 1129(a)(7). See, e.g. Adelphia I, 361 B.R. at 364 (holding that the proponent of the plan bears the burden of showing that the plan complies with Section 1129(a)(7)). The Bankruptcy Court accepted the Debtor's and Committee's proofs, which were unrebutted by any evidence presented by Cadle, that all creditors would receive at least as much, if not more, under the Plan than they would have received if the Debtor were liquidated under Chapter 7. In addition, the Bankruptcy Court properly considered, inter alia, the additional administrative expense costs of having a Chapter 7 trustee appointed to liquidate the Debtor's estate, Stern's familiarity with the case and professionalism, and the likelihood of success on Cadle's appeals of the Settlement Orders. See, e.g. Adelphia II, 368 B.R. at 254-255 (considering, inter alia, the administrative costs of a chapter 7 trustee, the familiarity

19

of the plan administrator with the debtor's business, assets and/or liabilities in applying the best interest of the creditors test, and the likelihood that an independent trustee would adopt the underlying settlement). Cadle has failed to establish that this finding by the Bankruptcy Court is clearly erroneous. Indeed, Cadle has offered nothing beyond mere speculation that the unsecured creditors would receive less under the Plan than by way of a liquidation under Chapter 7. Accordingly, this contention is without merit.

III.    CONCLUSION

For the foregoing reasons, the Order of the Bankruptcy Court confirming the Plan is affirmed and Cadle's appeal is dismissed.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: February  /  , 2008
       Central Islip, New York

Copies to:

Silverman Perlstein & Acampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Attn:   Gerard R. Luckman, Esq.

Pryor & Mandelup, L.L.P.
675 Old Country Road
Westbury, New York 11590
Attn:   Randolph E. White, Esq.

20

Farrell Fritz, P.C.
1320 Reckson Plaza
Uniondale, New York 11556
Attn:   Louis A. Scarcella, Esq.

Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Attn:   Madlyn Gleich Primoff, Esq.

Helen Reid & Priest LP
835 3rd Avenue
New York, New York 10022
Attn:   Pete K. Anglum, Esq.

Westerman, Ball, Ederer, Miller
& Sharfstein, LLP
170 Old Country Road, 4th Floor
Mineola, New York 11701
Attn:   Richard J. Gabriele, Esq.
        Thomas A. Draghi, Esq.
        John E. Westerman, Esq.

Office of the United States Trustee
560 Federal Plaza
Central Islip, New York 11722
Attn:   Terese A. Cavanaugh

Forchelli, Curto, Schwartz, Mineo,
Carlino & Cohen, LLP
330 Old Country Road, P.O. Box 31
Mineola, New York 11501
Attn:   Gary M. Kushner, Esq.